IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROMAN SEBASTIAN MONZON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:21cv00193 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| BRIAN HALL, *et al.*, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Roman Sebastian Monzon, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against several prison officials or employees, alleging excessive force and denial of medical care, in violation of his constitutional rights. The matter is currently before the court on a motion for summary judgment filed by Defendant J. L. Edwards.[1] (ECF No. 22.) After careful review of the record and the parties' written arguments, the court concludes that Edwards's motion must be granted.[2]

## I. BACKGROUND

### A. Allegations in the Complaint

At all times relevant to this action, Monzon was an inmate at River North Correctional Center ("River North"). In the Complaint, Monzon alleges that on November 16, 2020, he refused to obey an officer's order to return to his cell because he was worried about a cell mate

---

[1] The court recently granted Monzon leave to file an Amended Complaint (*see generally* Am. Compl. [ECF No. 56]), which does not change the allegations against Edwards.

[2] The motion for summary judgment filed by other defendants regarding Monzon's allegations of excessive force (ECF No. 40) will be separately addressed.

who "had an issue with [Monzon] being transgender." (Compl. pg. 3 [ECF No. 1]).[3] That officer filed a disciplinary charge against Monzon and had him placed in River North's Restrictive Housing Unit ("RHU"). Monzon alleges that the officers who escorted to the RHU fastened his restraints "extremely tightly," stepped several times on the backs of his feet, and pulled on a tether attached to his restraints, causing bruises to his wrists and ankles. (*Id.*) Monzon claims that later that day, Edwards failed to properly "examine and treat [his] injuries," merely taking [his] body temperature with an infrared thermometer." (*Id.*) As relief, Monzon seeks monetary damages and injunctive relief. (*Id.* at 4.)

### B. Edwards's Summary Judgment Evidence

Edwards submitted her own declaration and attached records from Monzon's medical chart maintained at River North. As a registered nurse assigned to provide medical care to River North inmates, Edwards conducted an initial medical assessment of Monzon after his transfer from the general population to the RHU on November 16, 2020, at around 8:00 p.m. (Decl. of J. L. Edwards Ex. A, July 26, 2021 [ECF No. 23-1].) This routine assessment is performed as a matter of course to determine whether the inmate will be at risk while housed in the RHU. Edwards first encountered Monzon while he was "engaged in belligerent behavior with the correctional officers." (Edwards Decl. ¶ 4.) When Edwards tried to ask Monzon about his injuries, she claims he "cursed at" her. (*Id.*) She asked him multiple times if he wanted to be assessed. First, he ignored her. When she asked again, he said, "Not by you, bitch." (*Id.*)

---

[3] Documentation in the record indicates that this incident occurred at 4:45 p.m. on November 16, 2020. (Aff. of Brian Hall Encl. A, Nov. 16, 2021 [ECF No. 41-3].)

Nevertheless, Edwards avers that she assessed Monzon's condition by observing him through the window of his cell. She noted that he was alert and oriented with some redness to his left wrist, but no other signs of injury. Edwards did not observe any breaks in Monzon's skin, bruising, or swelling. She noted that Monzon did not report any injuries to her and "denied any assault or abuse." (*Id.* at ¶ 5.) Monzon refused to let Edwards check his vital signs, including his temperature. He did not report any pain or ask for treatment of any kind. Edwards referred Monzon to a physician and told Monzon about RHU procedures to request medical attention.

Edwards states that, after her initial attempt to assess Monzon on November 16, 2020, she had no other involvement in his medical complaints, exams, or treatment. Records indicate that Monzon interacted numerous times with other nurses, physician assistants ("PAs"), and providers, that he received x-rays, and that he was referred to physical therapy. (*See id.* at ¶ 17.)

Undisputed medical records indicate that on November 25, 2020, a PA examined Monzon in his pod for complaints of left wrist pain related to injuries he claimed to have received on November 16, 2020. The PA noted that Monzon reported that his swelling had improved, that he exhibited no loss of feeling or power, and that only a light abrasion was visible. The PA ordered an x-ray for the left wrist but did not note any visible injury to Monzon's foot or ankle. And Monzon did not report such an injury. (*Id.* ¶ 6 & Ex. A.)

On December 2, 2020, a PA examined Monzon at his RHU cell after he complained of left wrist pain from an injury on November 16, 2020. The PA noted that an x-ray was pending and that the exam reflected no swelling or loss of feeling or power. (*Id.* ¶ 7 & Ex. A.)

Staff conducted x-rays of Monzon's left wrist on December 7, 2020. The results showed normal alignment and joint spaces, with no acute fractures or dislocation. (*Id.* ¶ 8 & Ex. A.)

On December 15, 2020, another nurse examined Monzon for complaints of intermittent left wrist pain. The nurse noted that Monzon had strong bilateral radial pulses, brisk nail-bed refill, and strong and equal hand grip, and that he denied any acute injury, assault, or abuse. The nurse reported Monzon's request to see a physician and referred him to one. The nurse did not note any report from Monzon about an ankle or foot injury, but the nurse advised him to avoid sports or exercise. (*Id.* ¶ 9 & Ex. A.)

On December 29, 2020, a physician examined Monzon for complaints of continued left wrist pain and numbness, symptoms he claimed he had suffered since he was handcuffed on November 16, 2020. He believed the officers had applied the cuffs too tightly and reported pain, weakness, swelling, numbness, and tingling. The doctor rated Monzon's grip strength at 5/5 and found that his ulnar and radial nerves were within normal limits. The provider ordered Monzon to complete physical therapy at a rehab clinic on site for his left wrist pain. The doctor did not note any report of an ankle or foot injury. (*Id.* ¶ 10 & Ex. A.)

On January 5, 2021, medical staff examined Monzon for an initial transfer medical assessment, after officers transferred him into RHU again. Staff noted a reddened area on wrist where the handcuffs had been placed. (*Id.* ¶ 11 & Ex. A.)

On April 28, 2021, Monzon complained—for the first time—of left foot pain and paresthesia.[4] The next medical notes are from May 5, 2021, when a nursing staff member examined Monzon in the medical unit. He voiced no complaints during that visit.

On May 26, 2021, medical staff examined Monzon after he complained of foot pain and paresthesia. He claimed that these issues had begun two months earlier, with no swelling or loss of feeling or power. Staff ordered an x-ray of Monzon's left big toe. The x-ray, conducted on June 3, 2021, showed no acute findings, but the technician reported "soft tissues appeared mottled and edematous with air within the soft tissues." (*Id.* at ¶ 15.) Staff advised Monzon to follow up in one or two weeks if his symptoms persisted. Records do not indicate if he did so.

### C. Monzon's Declaration in Opposition

In response to Edwards' motion, Monzon filed a declaration under penalty of perjury. He states that on November 16, 2020, once he arrived in the RHU, he was locked in a shower where officers used a tether attached to the handcuffs to pull on those cuffs, causing cuts to Monzon's wrist. He asserts that after their actions, he "had blood coming from a cut on [his] left wrist as well as scrapes accompanied by numbness in [his] hand, particularly in [his] thumb." (Decl. of Roman Monzon ¶ 5–6, Aug. 9, 2021 [ECF No. 30-2].) When he asked for medical treatment, officers told him to wait until a nurse conducted pill call. Monzon states:

> Later on that night, defendant J. L. Edwards came by my cell conducting pill call, escorted by an officer. I began speaking to Edwards, explaining to her how and by whom I had been assaulted during my escort to RHU; I also explained the extent

---

[4] "Paresthesia is defined as 'abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus.'" *Huntington v. Apfel*, 101 F. Supp. 2d 384, 388 n.3 (D. Md. 2000) (quoting *Dorland's Medical Dictionary* 1234 (28th ed. 1994)).

- 5 -

> of my injuries (i.e. that I had numbness in my hand, a cut on my left wrist, and scraping along part of my wrist where the handcuff had been). I specifically mentioned that the officer used his bodyweight applied through a dog leash attached to my handcuffs to create most of the injuries I was complaining of.
> Defendant Edwards, after listening to what I had to say, told me "[T]hat's too bad," and said there was nothing she could do for me. After having said that, she pointed an infrared thermometer at me, wrote something down, and walked away.

(*Id.* ¶¶ 8–9.) Monzon denies that he was belligerent and asserts that he "repeatedly asked [Edwards] for medical treatment," but "was rebuffed each time without cause." (*Id.* ¶ 11.) He denies that he refused any offer of treatment and contends that Edwards did not offer any.[5]

## II. DISCUSSION

### A. Standard of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. The

---

[5] Edwards filed her motion for summary judgment on July 27, 2021, and Monzon responded to that motion on August 20, 2021. Months later, in December 2021, Monzon mailed Edwards a set of interrogatories. In response, Edwards has moved for a protective order (ECF No. 52). After reviewing the interrogatories, the court will sustain Edwards's objections that they are not reasonably calculated to obtain evidence necessary to Monzon's ability to respond to the issues raised on summary judgment regarding his deliberate indifference claim against Edwards. As such, the court will grant the protective order and considers the summary judgment motion ripe for consideration.

> opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).[6]

Edwards has filed a supporting declaration and documentation in support of her motion. Accordingly, to avoid summary judgment, Monzon must present sufficient evidence that could carry the burden of proof of his claims at trial. *See id.* She "must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his favor. *Anderson*, 477 U.S. at 248.

"Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). "[U]nsupported speculation is not sufficient to defeat a summary judgment motion." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992). The court's inquiry is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).

## B.  Monzon's Claim against Edwards

Edwards asserts that she is entitled to summary judgment on Monzon's claim because no reasonable trier of fact could find that she acted with deliberate indifference to any serious medical needs on November 16, 2020. The court agrees.

---

[6] The court has omitted internal quotation marks, alterations, footnotes, and/or citations here and throughout this Memorandum Opinion, unless otherwise noted.

To state a cognizable Eighth Amendment claim regarding denial of medical care, an inmate must allege facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). This is a two-prong test, with the first "objective" prong requiring a demonstration of the seriousness of the deprivation, and the second "subjective" prong requiring a showing of the defendant's "sufficiently culpable" state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (U.S. 1994). A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

"[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Mere negligence does not constitute deliberate indifference; rather, a prison official must be aware of the facts from which the inference could be drawn that a substantial risk of harm exists *and* must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

The parties' declarations disagree on the nature of Edwards' encounter with Monzon in the RHU on November 16, 2020, and the content of their conversation. Edwards

characterizes their meeting as an intake assessment, bolstered by documentation (ECF No. 23-1 at 7), during which Monzon exhibited, at most, redness to his left wrist with no skin break, made no complaints of injuries, and refused to cooperate with having his basic vital signs measured. Monzon claims that Edwards came to his cell during pill call and he verbally described the injuries he had received and their cause and begged for treatment, but Edwards offered none, other than a temperature check.

For purposes of this summary judgment analysis, the court must take the facts stated in Monzon's declaration as true. His version of events, however, does not present facts sufficient to satisfy either facet of the Eighth Amendment standard.

First, Monzon does not show that his condition—as Edwards observed it during their encounter that night—constituted a serious medical need that required different treatment than she provided. Monzon claims he told Edwards that officers had yanked on the handcuffs, causing a cut and scrapes on his wrist and numbness in his hand. Yet, he alleges that he waited until pill call for any medical assessment, and records indicate this waiting period was as long as two or more hours. Moreover, Monzon does not dispute the authenticity of Edwards's medical notes and her declaration, indicating that she *observed* no skin break, bruising, or swelling on his wrists at the time she assessed him. Indeed, Monzon does not allege that his wrist was actively bleeding while he spoke with Edwards. And while Monzon claims that he asked Edwards for treatment, he does not describe what treatment, if any, he claims was necessary for his condition at that time.

Second, Monzon does not state facts showing that Edwards's medical assessment and actions during their encounter rose to the level of deliberate indifference. In other words, he

does not show facts from which the court could infer that Edwards knew of a serious medical need for alternative medical attention than she provided. As noted above, Monzon does not dispute Edwards's evidence that she observed no broken skin on his wrists or ankles, or that she advised him of the means to request medical care while in the RHU. Monzon does not claim to have made any such request for acute care of his wrists or ankles in the day or the week after Edwards provided him this information. Monzon also does not dispute Edwards's evidence that she referred him to a physician. Records indicate that on November 25, 2020, a PA examined Monzon to assess his wrist injury. By that time, Monzon told the provider that his swelling had improved and reported no loss of feeling or power. The provider noted only a light abrasion, but ordered x-rays that ultimately showed no fracture or misalignment. Monzon received follow up visits and was referred for physical therapy for his wrist pain.

On this record, the court cannot find that Monzon's encounter with Edwards on November 16, 2020, caused him harm or prevented him from receiving timely and appropriate care for his purported wrist injuries. Furthermore, Monzon does not identify any way in which the injuries he allegedly received on that date were aggravated or caused him additional harm because of Edwards's medical decisions when she examined him that day.

In short, Monzon has not identified any disputed fact that could persuade a jury that Edwards knew he had a serious medical need that required different medical attention than she provided to him on November 16, 2020. Moreover, undisputed evidence shows that Monzon had continued access to medical care after his encounter with Edwards and that he received multiple assessments and treatments thereafter for his related medical complaints. Accordingly, the court concludes that the Motion for Summary Judgment must be granted.

## III. CONCLUSION

For the stated reasons, the court will grant Edwards's motion for summary judgment.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 18th day of February, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE