# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **ROMAN SEBASTIAN MONZON,**        ) | |
|    **Plaintiff,**                           ) | |
|                                                        ) | **Civil Action No. 7:21cv00193** |
| v.                                                  ) | |
|                                                        ) | **MEMORANDUM OPINION** |
| **BRIAN HALL, et al.,**                   ) | |
|    **Defendants**                         ) | By: Pamela Meade Sargent |
|                                                        ) | United States Magistrate Judge |
|                                                        ) | |

Plaintiff, Roman Sebastian Monzon, ("Monzon"), a Virginia Department of Corrections, ("VDOC"), prisoner incarcerated at River North Correctional Center, ("River North"), has filed this civil rights action pursuant to 42 U.S.C. §1983, against the defendants, alleging that his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution were violated.

This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). This case is before the court on the defendants' motions for summary judgment. (Docket Item Nos. 40, 65) ("Motions"). For the reasons stated below, I will grant the Motions.

*I. Facts*

In his Amended Complaint, (Docket Item No. 56), which is not sworn or made under penalty of perjury, Monzon alleges that defendants Brian Hall, ("Hall"), and Officer Johnny Sturgill, ("Sturgill"), on November 16, 2020, violated his Eighth Amendment rights by being deliberately indifferent to the serious threat of injury by

another inmate. He further alleges that, on that same day, defendant Lt. Casey Tyler Jackson, ("Jackson"), violated his Fourteenth Amendment rights by punishing him for reporting the threat to his safety by filing a false disciplinary charge against him and placing him in restrictive housing. Monzon also alleges that defendants Officers D. Taylor and W. Carrico violated his Eighth Amendment rights by using excessive force on him as they escorted him to restrictive housing on that day.[1] In response to one of the motions for summary judgment, Monzon filed a declaration, however, this declaration also is not sworn or made under penalty of perjury. (Docket Item No. 48-3.) In response to the other motion for summary judgment, Monzon filed several sworn affidavits. (Docket Item Nos. 74-2 - 74-5.)

In his Affidavit, Monzon stated that Monzon spoke with defendant Hall on November 16, 2020, and told him that Monzon was experiencing problems with his cellmate, a member of the Gangster Disciples, which were "likely to result in violence against me." (Docket Item No. 74-2 at 1.) According to Monzon, Hall stated that he would look into getting him a new housing assignment. That afternoon, Monzon stated, Monzon was told by members of the Crips and Gangster Disciples gangs that, since Monzon was transgender, Monzon could not live in a cell with their "homie," his cellmate. These gang members told Monzon that, if Monzon returned to his cell, Monzon would be beaten by his cellmate and would be beaten again during the next recreation period by their gangs' members.

Monzon said that, based on these threats, Monzon refused to return to his cell at the end of the recreation period. Monzon "explained [the] situation in an

---

[1] Defendants Taylor and Carrico have not moved for summary judgment on the claims against them. Monzon also alleged a deliberate indifference claim based on lack of medical treatment against J.L. Edwards, on which the court previously entered summary judgment in Edwards's favor. (Docket Item No. 63.)

emergency grievance which I turned in to an officer named Bemis." Monzon stated that Bemis signed the emergency grievance and kept it in his possession until he gave it to Jackson. Monzon said that Monzon spoke with Jackson and "explained the nature of the threats against me (i.e. that I was going to be attacked by gang members because I, a transgender person, was in the cell with one of their own." (Docket Item No. 74-2 at 2.) Jackson then directed Monzon to return to his cell. According to Monzon, Monzon did not understand why he was being instructed to return to his cell when, based on previous experience at other VDOC facilities, it was the VDOC's policy and practice to reassign prisoners to new cells when they reported being threatened with bodily harm or reported being in fear for their life. When Monzon refused to return to his cell, Jackson filed a disciplinary charge against Monzon and put him in the Restrictive Housing Unit, ("RHU").

Monzon also filed an Affidavit from DeVinche Javon AlBritton, (Docket Item No. 74-3), in which AlBritton stated he was a VDOC prisoner housed at River North since 2003. AlBritton stated that he had been threatened on numerous occasions, he had reported the threats to prison officials and had been reassigned to another cell without being charged with a disciplinary offense for reporting the threats. AlBritton stated that, in his 19 years as a VDOC inmate, he had never known of a VDOC prisoner, including himself, being charged with a disciplinary offense for reporting a threat to the prisoner's safety and requesting a housing reassignment. Despite this statement, AlBritton also stated that, on January 25, 2022, he informed River North staff that he feared for his life because he and his cellmate, who was a known gang member, were about to fight. AlBritton stated that Lt. Landry ordered him to return to his cell, and, when he refused that order, he was given "assistance and protection," but he was charged with a disciplinary offense for disobeying a direct order, a 201-A charge. He further stated that River North had a current policy of requiring injury

or for the prisoners to fight before a prisoner is moved without a disciplinary sanction. AlBritton stated that River North was the only VDOC facility in which he had been housed that a prisoner would receive a disciplinary charge in response to reporting a threat to his life or safety and requesting protective housing reassignment.

Monzon also filed an Affidavit from Paul Harris, (Docket Item No. 74-4), in which Harris stated he was a VDOC prisoner housed at River North. Harris stated that, during his time in VDOC custody at Wallens Ridge State Prison and Sussex One State Prison, he had experienced threats of bodily harm, had refused to return to his cell after reporting the threats and had never received a disciplinary charge for such conduct. Although he said that he had not done so at River North while the prison was under COVID-19 precautions, Harris said that he had observed other River North prisoners who had reported being threatened and then received housing reassignment without receiving a disciplinary charge. He stated that, based on his experience, it was the policy of VDOC to provide a housing reassignment to any prisoner who stated that he was in fear for his life and/or being threatened with bodily harm by other prisoners.

Monzon also filed an Affidavit from K. King, a Lieutenant and Institutional Investigator at River North. (Docket Item No. 74-5.) This Affidavit originally was filed by the defendants in opposition to Monzon's request for preliminary injunctive relief. (Docket Item No. 20-1.) This Affidavit from King contains no information relative to the claims contained in Monzon's Amended Complaint against the defendants. Therefore, the facts contained in this Affidavit are not summarized here.

In support of their Motions, the defendants filed two Affidavits by defendant Jackson. (Docket Item Nos. 41-1, 66-1.) In one of these Affidavits, Jackson stated that he has served as a Lieutenant at River North until he left employment with the VDOC in August 2021. Jackson stated that, on November 16, 2020, Monzon claimed he could no longer live with his cellmate due to conflicts created by Monzon's transgender status. Monzon refused to return to his cell after recreation, and Jackson charged him with an institutional disciplinary infraction for disobeying an order. Jackson said that he did not place the disciplinary charge against Monzon for discriminatory reasons based on Monzon's gender identity. Jackson stated that many factors are involved in making decisions regarding appropriate housing assignments, including documented enemy situations, security and programming needs, medical and mental health requirements and available bed space. He said that prisoners are not allowed to make their own choices with regard to housing. Jackson stated, "If inmates were allowed to receive cell reassignments by simply refusing to return to their cells, it would create a threat to security and daily routines." (Docket Item No. 41-1 at 2.) Jackson said a charge is issued whenever an inmate refuses to return to his cell.

In his Supplemental Affidavit, (Docket Item No. 66-1), Jackson stated, "if there is no direct reason to place an inmate in the [RHU] and an appropriate bed is available, … cell reassignment may be approved, and the inmate could be moved without receiving a disciplinary charge." (Docket Item No. 66-1 at 2.) A copy of Monzon's disciplinary charge, RNCC-2020-1483, is attached to Jackson's Supplemental Affidavit as Enclosure A. Jackson stated that, on November 16, 2020, all nonemergency movement at River North had been stopped until COVID-19 test results were obtained from testing that had occurred on November 12 and 13, 2020. Jackson stated: "Due to the COVID-19 circumstances, it was not possible to

accommodate a cell reassignment when Monzon refused to return to his cell on this date. Therefore, I charged Monzon with a 201A- Disobeying an Order and he was placed in the RHU." (Docket Item No. 66-1 at 2.)

Enclosure A to Jackson's Supplemental Affidavit is a Disciplinary Offense Report dated November 17, 2020, for Case Number RNCC-2020-1483 and related documentation. (Docket Item No. 66-1 at 3-9.) The Disciplinary Offense Report reflects that Monzon was charged with violating Offense Code 201A, Disobeying an Order, on November 16, 2020, at 4:45 p.m. by Jackson. Under the section entitled "Description Of The Offense, it states: "Inmate Monzon … refused to return to his cell after being given a direct order to do so. Therefore this charge is being [written] per OP861.1." (Docket Item No. 66-1 at 3.) The form indicates that Monzon did not request a staff or offender advisor to assist at the hearing; Monzon did not request any witnesses or documentary evidence; and Monzon did not wish to appear at the disciplinary hearing. Monzon did not sign this form. The second page of the Disciplinary Offense Report reflects that Monzon pleaded guilty to the charge at his November 20, 2020, hearing. He was found guilty of the charge, and a $5 fine was imposed. Under the section entitled "Reason for Decision," it states: "During the service of the [Disciplinary Offense Report] Inmate Monzon stated 'no' he does not wish to appear at the disciplinary hearing, 'no' he does not wish to request witnesses or documentary evidence. According to OP 861.1, refusal to appear shall be considered an admission of guilt and a waiver of the inmate's witnesses. The hearing shall be conducted in the inmate's absence." (Docket Item No. 66-1 at 4.)

Also attached as part of Enclosure A is an Offender Request for Evidence form Case No. RNCC-2020-1483, dated November 20, 2022, requesting that the following documentary evidence be produced for Monzon's disciplinary hearing:

> PREA complaint filed at approx. time of offense via #55 Sexual Assault hotline demonstrates I was attempting to avoid immediate bodily injury by disobeying order
> Emergency grievance given to C/O Bemis to sign around time of offense … demonstrates I was attempting to avoid immediate bodily injury by disobeying order

(Docket Item No. 66-1 at 7.) The Hearings Officer denied the requests as being not relevant.

Enclosure A also contains a Disciplinary Appeal form for Case No. RNCC-2020-1483, dated December 1, 2020, reflecting that Monzon appealed his disciplinary offense conviction to the Facility Unit Head. Under the section entitled, "Contentions/Issues," Monzon wrote:

> I refused to respond to any questions or sign the disciplinary offense report, but J. Akers checked "No" to each question regarding the preference of my rights, whereas per OP 861.1 he was required to check "refused to respond." By so doing he caused me to be found guilty without a hearing, denying my right to due process.
> The disciplinary offense report and penalty offer which I received are different from the ones entered into record. My copies, the pink ones, were signed only by J. Akers, whereas the one in record was signed by J. Akers and Sgt. S. Peeples.
> Sgt. S. Peeples was not present at the service of the disciplinary offense report, hence her signature doesn't appear on my pink copy of the report, and therefore she perjured the document so as to assist in depriving me of my right to due process.
> I submitted a request for evidence form, which was indicative of my intent to appear at my hearing, contrary to what J. Akers wrote on the disciplinary offense report, and my request for evidence was denied, violating my right to due process

(Docket Item No. 66-1 at 9.)

Enclosure A also contains a December 10, 2020, Memorandum to Monzon from A. White, Assistant Warden, upholding Monzon's conviction for the November 16, 2020, charge of disobeying an order in violation of disciplinary offense code 201A. (Docket Item No. 66-1 at 8.)

The defendants also filed an Affidavit from R. Durbin, Corrections Operations Manager for the VDOC, in support of their Motions. (Docket Item No. 41-2.) In this Affidavit, Durbin stated that the VDOC does not discriminate against transgender inmates. He said the VDOC did not have a policy delineating special housing for transgender inmates. He stated that housing reassignments may be made due to "medical necessity, if there is a documented enemy situation or if the inmate is genuinely at risk." (Docket Item No. 41-2 at 1.) He said that transgender inmates assigned to general population were not treated any differently from other inmates, nor were they segregated due to their gender identity. Durbin stated, in deciding whether to assign a transgender inmate to a facility for male or female inmates, and in making other housing and programming assignments for transgender inmates, staff take into consideration whether an assignment would ensure the inmate's health and safety and whether the assignment would present management or security problems. He said that an inmate's transgender status is taken into consideration when assessing compatibility for cell assignments, and his own views with respect to safety are given serious consideration.

Defendant Hall also provided an Affidavit in support of the defendants' Motions. (Docket Item No. 41-3.) In this Affidavit, Hall stated that he was the Unit Manager of the D-Building at River North. Hall stated that, on November 12 and 13,

2020, River North conducted COVID-19 testing on all staff and inmates, and, during that time, all nonemergency movement was stopped until the testing results could be obtained. Hall said, on November 16, 2020, Monzon and Monzon's cellmate discussed with him Monzon's desire to change cell assignments. He said he explained to both inmates that cell reassignments had been suspended until the COVID-19 test results were received, which would be within the next day or so, at which time the move could be considered. Hall stated that both inmates advised that they were agreeable with waiting.

Later that day, after Hall had left for the day, Monzon refused to return to his cell after recreation. Monzon was charged with disobeying an order, RNCC-2020-1483, and moved from his housing assignment in D-4 to the RHU. Monzon was released back to general population housing assignment C-4 on December 9, 2020. A copy of the disciplinary charge against Monzon is attached to Hall's Affidavit as Enclosure A. A copy of the Institutional Classification Authority Hearing reports, which discussed Monzon's move to the RHU, are attached to Hall's Affidavit as Enclosure B. Also on November 16, 2020, Monzon filed a PREA, ("Prison Rape Elimination Act"), complaint against Hall, indicating that Monzon was in an unsafe situation. A copy of the Internal Incident Report related to that PREA complaint is attached as Enclosure C to Hall's Affidavit.

Hall stated that Monzon never advised him that Monzon's cellmate caused Monzon to fear for his life. Had Monzon do so, Hall said, appropriate measures would have been taken to separate the two inmates, investigate the situation and document a "keep separate" or "enemy" situation. Hall said that Monzon would have been reviewed for possible assignment to protective custody status if "we" had any reason to believe that were necessary. Hall's Affidavit did not explain to whom the

"we" in this statement referred. Hall said, to his knowledge, Monzon has not been physically harmed by anyone while confined at River North; nor did staff discriminate against him because he is transgender or for any other reason. Hall said that he had no reason to believe that Monzon's current housing assignment is inappropriate or that his life is in danger, or that staff are refusing to consider his complaints in retaliation for filing lawsuits.

The documents making up Enclosure A to Hall's Affidavit are all contained in Enclosure A to Jackson's Supplemental Affidavit and are summarized above.

Also attached as Enclosure B to Hall's Affidavit is an Institutional Classification Authority Hearing Notification Form, dated November 16, 2020, at 5:50 p.m. (Docket Item No. 41-3 at 11.) This Form stated, "Inmate R. [Monzon] … placed in RHU under General Detention for refusing housing and disobeying an order." (Docket Item No. 41-3 at 11.) What appears to be Monzon's signature is on the Form under a box checked indicating that he did not waive his right to receive 48 hours' notice of his hearing date. Monzon requested that Correctional Officer Bemis be present at the hearing. Oddly, neither "Yes" nor "No" is checked in response to "I wish to attend." (Docket Item No. 41-3 at 11.) Also attached as part of Enclosure B is an Institutional Classification Authority Hearing form with a "run" date of December 9, 2020. (Docket Item No. 41-3 at 12.) This form indicates that, on November 19, 2020, the Institutional Classification Authority, ("ICA"), recommended that Monzon return to general population status pending release to appropriate housing. This request was approved by Anthony D. White on November 23, 2020.

Also attached as Enclosure C to Hall's Affidavit is an Internal Incident Report form with Internal Incident Number IIR-RNCC-2020-001702 and dated November 16, 2020, at 4:15 p.m. (Docket Item No. 41-3 at 13.) Under the section entitled, "Description of Incident," it states:

> A message was retrieved from Inmate Roman Monzon … calling on November 16, 2020 at 4:15 PM. Inmate said she is filing this complaint against Unit Manager Hall. Inmate said she recently came out as transgender and this has caused conflict with her cellmate who is a registered gang member. Inmate said she cannot live in the cell with this individual and is trying to orchestrate a cell move which isn't happening. Inmate alleges she is in an unsafe situation with threat of immediate bodily harm because she is transgender.

(Docket Item No. 41-3 at 13.)

Defendant J. Sturgill also provided an Affidavit in support of the defendants' motions for summary judgment. (Docket Item No. 41-4.) Sturgill stated that he was a correctional officer at River North. He stated that he had no recollection of Monzon ever calling over the intercom to advise that Monzon was being threatened by his cellmate. Sturgill stated that, if he had received such information, he would not have ignored it and would have reported it to his supervisor for appropriate action. Sturgill stated that he was aware that Monzon had been moved to the RHU in November 2020 when he refused to return to his cell in general population in the D-Unit. Sturgill stated that Monzon never advised him that he was fearful of his cellmate. Again, Sturgill said, if Monzon had made him aware of that, he would have reported it to his supervisors. Sturgill said he would never ignore such a complaint or discriminate against an inmate because he is transgender.

*II. Analysis*

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. To be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

In support of the Motions, the defendants argue that there is no genuine dispute as to any material fact, and summary judgment should be entered in their

favor. In particular, defendants Hall and Sturgill argue that judgment should be entered in their favor because Monzon has not shown that either defendant acted with deliberate indifference to any serious risk of injury to Monzon. They also argue that the undisputed evidence shows that Monzon suffered no injury. Defendant Jackson argues that judgment should be entered in his favor on Monzon's equal protection claim because Monzon has failed to show that he was treated differently from any other inmate who was similarly situated or that Jackson acted with any discriminatory intent.

In his Amended Complaint, Monzon claims that defendants Hall and Sturgill were deliberately indifferent to a serious risk of harm in violation of the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment. *See* U.S. CONST. amend. VIII. This amendment not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment also requires prison officials to take reasonable measures to guarantee the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). It imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. Prison officials violate an inmate's Eighth Amendment right to be free from physical harm inflicted by other inmates when prison officials are deliberately indifferent to "specific known risks of such harm." *Pressly v. Huto*, 816 F.2d 977, 979 (4th Cir. 1987) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)). To establish that prison officials are liable under § 1983 for failure to protect an inmate from violence at the hands of other inmates, a plaintiff must show: (1) "serious or significant physical or emotional injury," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003), and (2) that the prison officials had a "sufficiently

-13-

culpable state of mind." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted); *see Odom v. S.C. Dep't of Corrs.*, 349 F.3d 765, 770 (4th Cir. 2003). As to the first prong, "[o]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta*, 330 F.3d at 634. As to the second prong, the requisite state of mind is one of "deliberate indifference" to the inmate's health or safety. *Farmer*, 511 U.S. at 834.

A prison official is deliberately indifferent if he knows of an excessive risk to inmate health or safety and disregards or fails to respond to that risk. *See Farmer*, 511 U.S. at 844-45. Therefore, liability under this standard requires two showings. First, the evidence must show that the prison official subjectively recognized a substantial risk of harm. It is not sufficient that the official should have recognized it; he must actually have perceived that risk. *See Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). Second, the evidence must show that the prison official subjectively recognized that his actions were "inappropriate in light of that risk." *Rich*, 129 F.3d at 340 n.2. It is insufficient that the official should have recognized that his actions were inappropriate; the official actually must have recognized that his actions were insufficient. *See Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001).

Here, Monzon has failed to provide the court with any evidence of "serious or significant physical or emotional injury." *De'Lonta*, 330 F.3d at 634. While Monzon alleges in his Amended Complaint that Hall and Sturgill were deliberately indifferent to threats to his safety from other inmates, Monzon did not allege that any other inmate actually harmed him; nor did Monzon allege that he even suffered any emotional injury as a result of the defendants' alleged failure to protect. Furthermore, Monzon has offered no evidence that he suffered any physical or

emotional injury. In fact, Monzon's own evidence shows that, on the same date that Monzon claims that Hall and Sturgill were notified of the threats to Monzon's safety, Monzon refused to return to his cell and was transferred to RHU, away from the alleged threat. Based on this, I find that there is no genuine dispute as to any material fact on Monzon's deliberate indifference claim against Hall and Sturgill, and I will enter summary judgment in their favor. Because there is no factual dispute on this issue, I do not address the defendants' additional argument on this claim.

Defendant Jackson also argues that summary judgment should be entered in his favor on Monzon's equal protection claim. The Fourteenth Amendment to the U.S. Constitution states: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." In order to survive summary judgment on an equal protection claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Proof of discriminatory intent is required to establish a violation of the Equal Protection Clause. *See Shaw v. Martin,* 733 F.2d 304, 312 (4th Cir. 1984). Mere conclusory allegations of discrimination are insufficient, as are mere conclusory allegations of disparities. *See Spaulding v. Dixon*, 912 F.2d 464, at *1 (4th Cir. Sept. 4, 1990); *Chapman v. Reynolds*, 378 F. Supp. 1137, 1139-40 (W.D Va. 1974); *see also Utt v. Brown*, 2015 WL 5714885, at *13 (E.D. N.C. Sept. 29, 2015) (plaintiff failed to identify any particular inmate at the same facility who was similarly situated who was treated differently from plaintiff, and he failed to produce evidence that any prison official acted with discriminatory purpose).

Here, Monzon has not provided the court with any evidence of any specific similarly situated prisoner at River North who was treated differently. While both AlBritton and Harris provided Affidavits in which they claimed knowledge of other prisoners who were not charged with disciplinary offenses after refusing to return to their cells due to threats of violence, neither identified any specific prisoner on any specific occasion. In fact, AlBritton stated that he, himself, had refused to return to his cell at River North on January 25, 2022, and he also was charged with violating disciplinary Offense Code 201A for refusing to obey an order. Furthermore, Monzon has provided the court with no evidence of discriminatory intent by Jackson. Neither Monzon's Amended Complaint, nor Monzon's Affidavit, contain any allegation of discriminatory intent by Jackson. In fact, the only evidence before the court regarding Jackson's intent, is Jackson's statement that he did not act with any discriminatory intent. To state a valid claim for violation of equal protection, and survive a motion for summary judgment, an inmate must put forward specific, non-conclusory facts that establish an improper motive for a defendant's actions. *See Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003) (King, J., dissenting) (citing *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001)). Based on this, I find that there is no genuine dispute as to any material fact on Monzon's equal protection claim against Jackson, and I will enter summary judgment in Jackson's favor.

An appropriate Order will be entered.

**ENTERED**: September 13, 2022.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE