IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ROMAN SEBASTIAN MONZON,**     )<br>        Plaintiff,                                )<br>                                                    )<br>**v.**                                               )<br>                                                    )<br>**BRIAN HALL, et al.,**                  )<br>        Defendants                          )<br>                                                    )<br>                                                    )  | Civil Action No. 7:21cv00193<br><br>**MEMORANDUM ORDER**<br><br>By: Pamela Meade Sargent<br>United States Magistrate Judge |

Plaintiff, Roman Sebastian Monzon, ("Monzon"), a Virginia Department of Corrections, ("VDOC"), prisoner previously incarcerated at River North Correctional Center, ("River North"), filed this civil rights action, pursuant to 42 U.S.C. §1983, against the defendants, alleging that Monzon's rights under the Eighth and Fourteenth Amendments to the U.S. Constitution were violated. The only claim remaining before the court is that defendants Correctional Officers D. Taylor, ("Taylor"), and W. Carrico, ("Carrico"), violated Monzon's Eighth Amendment rights by using excessive force on Monzon as they escorted Monzon to restrictive housing on November 16, 2020. This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). This case is before the court on Monzon's Motion for Sanctions for Spoliation of Evidence. (Docket Item No. 76) ("Motion"). For the reasons stated below, I will deny the Motion.

I.

In the Amended Complaint, (Docket Item No. 56), Monzon alleged that, as Taylor and Carrico escorted him to restrictive housing on that day, one of them repeatedly stepped on the back of Monzon's feet. Monzon further alleged that, upon their arrival in restrictive housing, Taylor and Carrico handcuffed Monzon's wrists with excessive tightness and placed Monzon in a shower stall. Once in the stall, Monzon alleged, Taylor and Carrico attached a leash to the handcuffs, and they yanked on the leash. Monzon alleged they also did this when removing the leg shackles. Monzon alleged that these actions left bruises on Monzon's wrists and feet.

Monzon attached a number of documents to the original Complaint to show that administrative remedies had been exhausted as to the excessive force claim against Taylor and Carrico. (Docket Item No. 1-1 at 14-20.) Monzon did not specifically request that any video evidence of the November 16, 2020, escort be preserved in either the Informal Complaint or Regular Grievance. In response to Monzon's Informal Complaint, Captain J. Montgomery wrote: "Upon review of camera footage there was no evidence to support your claims of assault." (Docket Item No. 1-1 at 14.) In response to Monzon's Regular Grievance, the Assistant Warden[1] wrote:

> A thorough review of camera footage was completed concerning your allegations of being assaulted by [River North] Staff. Camera footage reveals that you walked restraint free from D-Building to A-Building and even pushed a property cart with your personal property on it. Upon arrival to A-Building you were placed in restraints before entering the A-Building door. You were then escorted into A-Building, through the vestibule, directly into A-2 Pod, and placed in the shower.

---

[1] The Assistant Warden's signature is not legible.

> At no time does camera footage disclose you being assaulted or hazed by [River North] Security Staff; however, it does confirm you were properly escorted. Evidence verifies [River North] Staff completed your escort correctly and did not assault you in any way.

(Docket Item No. 1-1 at 18.) In appealing this Level I response, Monzon wrote:

> The very nature of the assault I complain of precludes the usefulness of video evidence; my complaint is in regards to excessive tightness of handcuffs and officers' use of wristlock technique on my wrists for the sole purpose of injuring me, something that wouldn't be visible on surveillance cameras, among other things.

(Docket Item No. 1-1 at 19.)

On July 16, 2021, Monzon filed Plaintiff's First Request for Production of Documents, (Docket Item No. 21), in which he requested production of video surveillance taken on November 16, 2020, of River North's D-2 Pod between the hours of 1 p.m. and 5 p.m.; of the boulevard, the walkway located in front of buildings A through D, from 4:30 to 6 p.m.; of the A Building vestibule from 4:30 to 6 p.m.; and of the A-2 Pod from 5 p.m. to 6:15 p.m. The defendants responded that there were no responsive records in their possession, custody or control. (Docket Item No. 44-3.)

Monzon then filed the Motion, arguing that the defendants' failure to preserve the video evidence prejudices the claim and seeking unspecified sanctions. In opposition to the Motion, the defendants filed an Affidavit from K. King, currently a Captain at River North and formerly a Lieutenant and the Institutional Investigator at River North on November 16, 2020. (Docket Item No. 79-1) ("King Affidavit"). As Institutional Investigator in 2020, King stated that he was not provided with a copy

of either Monzon's Informal Complaint or Regular Grievance concerning the alleged use of excessive force by Taylor and Carrico on November 16, 2020. Because he was not notified of Monzon's claims, King stated that he had no reason to retain or preserve any video footage from November 16, 2020, and he did not do so. King stated that Correctional Officers cannot save video recordings and that Taylor and Carrico had no involvement whatsoever with the failure to retain video footage from November 16, 2020. King stated that River North officials were notified of this lawsuit on April 30, 2021. By that time, the River North surveillance camera system had recorded over any recordings made on November 16, 2020. King stated that VDOC policy required an inmate to specifically request that video footage be preserved by identifying the specific dates and time periods of the requested footage in a Grievance. Upon receipt of a Grievance that references a specific video recording, the Intel Unit would be notified so that the requested video footage could be retained. King noted that Monzon's Informal Complaint and Regular Grievance did not request any video recording be retained.

In opposition to the Motion, the defendants also filed an Affidavit from B. Walls, the Institutional Grievance Coordinator at River North. (Docket Item No. 79-2) ("Walls Affidavit"). Walls stated that VDOC Operating Procedure, ("OP"), 866.1, Offender Grievance Procedure, sets out the VDOC's administrative remedies available to inmates to resolve their complaints. According to Walls, OP 866.1 states "[i]f a grievance is received that references a specific audio or video recording, a copy of the recording shall be made and maintained at the facility." Walls stated that, only if an inmate's Grievance stated that he wanted camera footage retained and he provided the specific information as to the date and time of the requested video, the Intel Unit would be notified so that the video footage could be retained. Walls stated that, if an inmate's Complaint or Grievance did not request that video footage be

retained, the forms would not be forwarded to the Intel Unit. Walls stated that all inmates receive orientation upon arrival at River North, including orientation on the Offender Grievance Procedure. Walls also stated that River North inmates have access to OP 866.1. Copies of Monzon's Informal Complaint and Regular Grievance, alleging the use of excessive force by Taylor and Carrico on November 16, 2020, were attached to the Walls Affidavit. Walls stated that Monzon did not reference video or camera footage in either the Informal Complaint or Regular Grievance. Because Monzon did not state a request to retain video footage, Walls stated that the Grievance was not forwarded to the Intel Unit.

## II.

Federal Rules of Civil Procedure Rule 37(e) controls when sanctions may be imposed for a failure to preserve electronically stored information. *See Jenkins v. Woody,* 2017 WL 362475, at *12-13 (E.D. Va. Jan. 21, 2017); *In re: Ethicon, Inc.*, 2016 WL 5869448, at *2 (S.D. W.Va. Oct. 6, 2016). Rule 37(e) states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e). Thus, a number of requirements must be met before the court may sanction a party over the loss of electronically stored information, such as the surveillance video at issue here. First, there must be a showing that the electronically stored information should have been preserved in the anticipation or conduct of litigation. Second, there must be a showing that the party who possessed the information failed to take reasonable steps to preserve the information. Third, the information must be lost and cannot be restored or replaced through additional discovery. If these requirements are met, and the moving party can show prejudice from the loss of the information, the court may order measures "no greater than necessary to cure the prejudice." FED. R. CIV. P. 37(e)(1); *see Muhammad v. Mathena*, 2016 WL 8116155, at *8 (W.D. Va. Dec. 12, 2016). The most severe penalties, an unfavorable inference instruction or default judgment, may be entered only upon a finding that the party who failed to preserve the information "acted with the intent to deprive another party of the information's use in the litigation." FED. R. CIV. P. 37(e)(2); *see Muhammad*, 2016 WL 8116155 at *8.

In this case, the Motion must fail because Monzon cannot show prejudice from the loss of the video recordings in this case. In particular, Monzon recognized that the video recordings would not prove or disprove the allegations raised. As set out above, in appealing the Level I response to the Regular Grievance, Monzon wrote:

> The very nature of the assault I complain of precludes the usefulness of video evidence; my complaint is in regards to excessive tightness of handcuffs and officers' use of wristlock technique on my wrists for the sole purpose of injuring me, something that wouldn't be visible on surveillance cameras, among other things.

(Docket Item No. 1-1 at 19.) Since there is no evidence of any prejudice before the court, there is nothing to remedy. Furthermore, the most severe penalties under Rule 37(e), an unfavorable inference instruction or default judgment, may be entered only upon a finding that the party who failed to preserve the information "acted with the intent to deprive another party of the information's use in the litigation." FED. R. CIV. P. 37(e)(2). There is no such evidence before the court. In particular, there is no evidence that the two remaining defendants in this case, Taylor and Carrico, had any participation whatsoever in failing to preserve the video evidence.

For the above-stated reasons, the Motion is **DENIED**.

The Clerk's Office shall provide a copy of this Memorandum Order to all counsel of record and unrepresented parties.

**ENTERED**: January 3, 2023.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE